Whaley, Chief Justice,
delivered the opinion of the court:
On December 9, 1931, the plaintiff entered into a contract with the defendant for the erection of nine buildings of the Hospital for Defective Delinquents at Springfield, Missouri. The architects were Joannes & Marlow, of New York City, and by Article 30 of the specifications they were the duly *81 authorized representatives of the contracting officer, William D. Mitchell, Attorney General.
The agreed work was performed. The contractor sublet the entire work and divided it among its subcontractors by paragraphs in the specifications.
As disclosed by the findings, certain claims have been withdrawn. There are other claims that fail for lack of satisfactory proof as to the extent of alleged damages. These latter claims include that for cost of installing Carthage marble in place of limestone, for extra cost of matching brick for color, and for precasting slabs instead of pouring them in place. On those claims the plaintiff accordingly cannot recover.
The remaining claims will be taken up in the order in which they appear in the findings of fact.
The first of these is for furnishing and installing extra steel dressers or cabinets.
The scheme of the plans and drawings made clear what was and what was not included in the contract. The plot plan bore the note: “Buildings and other work shown dotted are not included in this contract.” Of course this could only mean that work shown in solid lines was part of the contract. These cabinets or dressers were scattered over the project. The drawing showing the detail of the cabinets stated: “See plans for locations.” Nothing could be more definite as to number and location of the cabinets, and they were shown in solid lines in the diet and service kitchens. The controversy is over the question whether those cabinets or dressers were to be furnished and installed in the kitchens indicated.
Article 2 of the contract (it is quoted in the findings) provides that: “Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications shall be of like effect as if shown or mentioned in both.” This is part of plaintiff’s agreement; the architects, acting as contracting officers, ruled that the kitchen cabinets were included in the contract, and their decision was final under Article 30 of the specifications. The record shows no appeal. Nothing more is due and the plaintiff may not recover on this item.
*82 The second item is for the cost of repairing cracks in corridor walls. It is found by the court that these cracks developed as a direct result of the defendant’s faulty design. It hardly needs the testimony of an expert witness that such cracks would develop in concrete foundations and extend into the overlying brickwork, where the concrete foundations' were 200 feet or over and without expansion joints. It was bound to crack somewhere. Defendant’s officers refused to accept the buildings with the existing cracks. The walls and their foundations had been constructed in accordance with contract requirements and under the constant inspection of defendant’s officers. ,The defendant’s refusal to accept the buildings after such performance was a breach of the contract. The plaintiff is entitled to recover its damages, which amount to $1,054.94.
The plaintiff sues for $2,642.50 for furnishing and installing wooden blocks behind metal window trim.
The plaintiff’s subcontractor for the metal window trim insisted that the plaintiff supply these blocks for installation purposes. The plaintiff thereupon called upon the architects to supply an order for these blocks as extra work. The architects ruled that they were already required by the contract, were not extra work, and that there would be no addition to the contract price. The drawings indicate material of an undefined nature where the blocks in controversy went. The architects acted for the contracting officer and by Article 30 of the specifications the decision of the contracting officer’s representative as to the proper interpretation of the drawings and specifications was final. But without such a provision, and such a decision, the drawings required a block of some material or other, and there is here no contention that the material should have been other than wood. On this item the plaintiff may not recover.
Plaintiff sues for $2,120.67, cost of installation of hollow metal frames for pencil wire guards, hinged to the metal window trim. The plaintiff, in the course of the work, protested that these frames were not required. The architects demanded their use, claiming that their installation was part of the contract, citing pertinent drawings and specifications. The architects’ decision was a fair and *83 reasonable interpretation of the contract provisions, they were acting for the contracting officer, and this being so', the plaintiff is not entitled to recover.
The last item is a claim for alleged shortage in payment on an order for additional sewer connections and gas stops, work not provided for by the written contract. The facts are not in dispute. It was extra work, not required by the contract. It had been ordered by the architects and performed by the plaintiff with the understanding that a formal order would follow. This accorded with the practice of the parties on the contract work, although it was not authorized by the contract. The price had not been agreed, upon.
There was no compliance either with Article 3 of the contract on “changes” or with Article 5 on “extra work.”
The work was done and the plaintiff has been paid therefor $641.00. The defendant has thus acknowledged a liability, but it has not acknowledged a liability in excess of $641.00: The question presented is whether there was an express agreement or an agreement implied in fact to pay more.
The supposed invitation, proposal, and acceptance, exhibited in the findings, is no such agreement. It is stated in prospective terms, when the work was already done. The only thing remaining to be done was agreeing upon the price. If the plaintiff’s proposal be limited to the offer of $935.96 as the price, that offer was not accepted. What authority the director of prisons had does not appear, but that is not important, because even he did not accept the proposal of $935.96. The director would not go above $641.00 and that was all that plaintiff finally received.
Whether there was an agreement to pay that amount may be questioned. However, it was paid and the defendant apparently concedes liability to that extent. But there was no agreement to pay more, and we do not know what the extra services were reasonably worth.
There can be no recovery on this last item of plaintiff’s claim.
The plaintiff is entitled to recover $1,054.94.
The defendant’s counterclaim for. capital-stock, income and excess-profits taxes is not resisted, and the defendant' is entitled to recover thereon the two principal amounts of *84 $784.47 and $32,883.64, with interest at six percent per annum on $734.47 from September 1937 and on $32,383.64 from November 12,1937.
It is so ordered.
Madden, Judge; and Littleton, Judge, concur.
Jones, Judge; and Whitaker, Judge, took no part in the decision of this case.